NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

**Electronically Filed
Intermediate Court of Appeals
30179
21-AUG-2013
09:07 AM**

NOS. 30179 and CAAP-10-0000082

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

**NO. 30179**
I.S., Plaintiff-Appellee, v.
P.S., Defendant-Appellant.

------------------

**NO. CAAP-10-0000082**
I.S., Plaintiff-Appellant/Cross-Appellee, v.
P.S., Defendant-Appellee/Cross-Appellant.

APPEAL FROM THE FAMILY COURT OF THE FIFTH CIRCUIT
(FC-D NO. 08-1-0204)

MEMORANDUM OPINION
(By: Foley, Presiding Judge, Reifurth and Ginoza, JJ.)

This is a consolidated appeal from a divorce decree and a post-decree order. In appeal No. 30179, Defendant PS (Husband) appeals from the Family Court of the Fifth Circuit's (family court)[1] November 9, 2009 Amended Decree Granting Divorce and Awarding Child Custody (Amended Divorce Decree). In appeal No. CAAP-10-82, Husband cross-appeals from an amended order issued by the family court on September 8, 2010 that recalculated child support (Order Recalculating Child Support). Plaintiff IS (Wife) filed an appeal from the Order Recalculating Child Support in

_____

[1] The Honorable Calvin K. Murashige presided.

appeal No. CAAP-10-82, but her appeal was later dismissed pursuant to a stipulation by the parties.

In appeal No. 30179, Husband raises the following points of error with respect to the Amended Divorce Decree: 1) the family court erred, made clearly erroneous findings of facts, and its conclusions of law were wrong related to the valuation of the parties' real property; 2) the family court abused its discretion by denying Husband Category 1 credit for his construction business and Category 3 credit for a gift from his mother, and awarding Wife Category 1 credit for her condo; 3) the family court abused its discretion by reducing Husband's share of the marital estate by $20,438.50 for $40,877 in "unnecessary" and "unaccounted for" spending; and 4) the family court abused its discretion by imputing $21,315 a month in income to Husband, and awarding excessive child support and alimony to Wife.

In appeal No. CAAP-10-82, Husband's point of error is that the family court erred in its Order Recalculating Child Support because it did not address the issue of Husband's construction company's business loss; the family court's findings regarding legal fees, travel, personal, and other expenses are not supported by the record and are incomplete; and the business expenses included by the court in Husband's personal income were legitimate business expenses and should not have been added to his monthly earnings for purposes of calculating child support. Husband also contends that the family court's findings as to Husband's income during 2009 make clear that the monthly earnings attributed to Husband in the Amended Divorce Decree and the child support awarded in accordance therewith were clearly erroneous and constituted an abuse of discretion.

For the reasons discussed below, we affirm in part, vacate in part, and reverse in part.

## I. **Real Property Valuations**

Husband challenges the family court's valuation of the parties' real property, which comprised 80% of their marital assets, and alleges that the family court erred in utilizing outdated and inaccurate appraisals to value the property during a historic downturn in Hawaiʻi housing prices. We review the family court's decisions for an abuse of discretion. Fisher v. Fisher, 111 Hawaiʻi 41, 46, 137 P.3d 355, 360 (2006). Husband also argues that the family court failed to make sufficient findings pursuant to Hawaiʻi Family Court Rules (HFCR) Rule 52 to support its valuation of the properties.

First, Husband argues that the family court erred in valuing the Puhi industrial lot at $574,000. However, as Wife contends and Husband concedes, the parties stipulated that the value of the Puhi industrial lot would be the 2006 purchase price so that it would not need to be appraised. This stipulation was initially put on the record at a hearing on December 8, 2008. On December 16, 2008, the family court filed an order stating that "[t]he value of the Puhi Industrial lot purchased by [Husband's] Trust shall be valued at the purchase price at time of trial, for purposes of property division." It is clear from the record that the family court ordered that the value of the Puhi industrial lot be set at its 2006 purchase price based on the parties' stipulation. The family court did not abuse its discretion in valuing the Puhi industrial lot based on the parties' stipulation. Husband offers no authority for overturning an order based upon a valid stipulation by the parties. Moreover, given the stipulation by the parties, we see no need for the family court to have made a finding in support of its valuation of the Puhi industrial lot.

Second, Husband argues that the family court abused its discretion when it set March 26, 2009 as the valuation date for the parties' real property, three months before trial was

eventually held. Trial was originally set for May 8, 2009, with exchange of exhibits and witness lists due by April 24, 2009 (two weeks before the May 8, 2009 trial). At a May 4, 2009 hearing, Wife sought a trial continuance because new appraisals by Jose Diogo (Diogo) had just been submitted by Husband that day. On May 8, 2009, the family court continued the trial until June 26, 2009, and set the valuation date based on the valuation date utilized by Husband's appraiser, Diogo, which was March 26, 2009. On May 19, 2009, the family court issued a written order that the trial be continued to June 26, 2009, and that the valuation date for appraisals of the parties' real property would be March 26, 2009. On May 27, 2009, Husband filed a motion seeking, *inter alia*, to set a later date for appraisal of the parties' properties. On June 1, 2009, the court orally denied the motion, and on June 5, 2009, the family court filed an order denying the motion.

Husband fails to demonstrate that the family court abused its discretion in setting March 26, 2009 as the valuation date for the appraisals. Husband argues that the relevant date for determining the value of the parties' property must be at the time of divorce, citing to Myers v. Myers, 70 Haw. 143, 151, 764 P.2d 1237, 1243 (1988), Markham v. Markham, 80 Hawai'i 274, 287, 909 P.2d 602, 615 (App. 1996), and Weinberg v. Dickson-Weinberg, 121 Hawai'i 401, 220 P.3d 264 (App. 2009), *vacated in part by* Weinberg v. Dickson-Weinberg, 123 Hawai'i 68, 229 P.3d 1133 (2010). First, we note that the part of Weinberg relied upon by Husband was vacated by the Hawai'i Supreme Court. Weinberg, 123 Hawai'i at 70, 229 P.3d at 1135. Second, although Husband is correct that "the termination point of the marriage partnership for purposes of property division is the conclusion of the divorce trial[,]" Markham, at 287, 909 P.2d at 615 (citation omitted), none of the cases cited by Husband suggest that a family court abuses its discretion when it sets a valuation date

for the parties' real property three months before trial, especially under circumstances as in this case. Here, the record establishes that trial was scheduled for May 8, 2009, but Wife sought a continuance on May 4, 2009, because Husband had just served her with new appraisals, now done by Diogo, which Wife needed to review and determine if she needed updated appraisals. On May 8, 2009, the family court continued the trial and, as clearly expressed on the record on May 8, 2009, the court set the valuation date for the appraisals based on the valuation date utilized by Diogo. Given these circumstances, it was within the discretion of the family court to set a firm valuation date as it did, based on the most recent appraisal.

Third, Husband argues that the family court abused its discretion in adopting Dennis Nakahara's (Nakahara) appraisals rather than Diogo's appraisals. We conclude that Husband fails to carry his burden of demonstrating an abuse of discretion by the family court in this regard. Husband argues in conclusive fashion that Diogo's appraisals were more accurate and up-to-date, but provides no record citations to the evidence to support his arguments. See Hawai'i Rules of Appellate Procedure Rule 28(b)(7). Similarly, Husband provides no evidentiary support for his arguments that Nakahara's appraisals were unreliable. The record indicates that the major difference between the appraisals was that Diogo applied a 2% per month negative time adjustment to account for the downturn in prices, whereas Nakahara believed such an adjustment was too aggressive and did not accurately reflect the reduction in property values on Kauai at the time. It is clear from the family court's FOF 18 in its May 20, 2010 Findings of Fact and Conclusions of Law (5/20/10 Findings and Conclusions) and the Property Division Chart attached to the Amended Divorce Decree that the family court credited Nakahara's appraisals over Diogo's appraisals. "[T]he family court possesses wide discretion in making its decisions and those

5

decision[s] will not be set aside unless there is a manifest abuse of discretion." Fisher, 111 Hawai'i at 46, 137 P.3d at 360 (citation omitted, block quote format altered). Further, "[i]t is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of evidence; this is the province of the trier of fact." Id. (citation omitted, internal quotation marks omitted). It was within the family court's discretion to adopt Nakahara's appraisals.

## II. **Partnership Credits**

Husband next challenges the family court's rulings which gave Husband no Category 1 credit for his business or Category 3 credit for money from his mother, and which gave Wife Category 1 credit for her condo. Husband further contends that the family court failed to make sufficient findings pursuant to HFCR Rule 52 to support its rulings.

First, Husband argues that the family court abused its discretion in denying Husband Category 1 credit for his construction business on the date of marriage (DOM), which was December 1, 2001. When determining a party's Category 1 property, a court must determine "*[t]he net market value (NMV), plus or minus, of all property separately owned by one spouse on the date of marriage[.]*" Helbush v. Helbush, 108 Hawai'i 508, 512, 122 P.3d 288, 292 (App. 2005). In the 5/20/10 Findings and Conclusions, the family court's FOF 12 states that "[b]ased upon the evidence, the Court does not find any date of marriage value for [Husband's construction company]." Given the evidence in the record, this finding is clearly erroneous.

Husband adduced evidence and testified at trial related to his business at DOM including, *inter alia*, a balance sheet (with assets and liabilities), an income statement for November 2001 (setting forth operating income, direct expenses, gross profits, and net profit), and bank statements showing a total of

approximately $79,286 in two accounts under the business. Husband asserts on appeal that the family court should have awarded him $97,586 in Category 1 credit ($79,286 in cash and $18,300 in depreciated equipment) for his business. Husband points out that the family court apparently utilized available cash and the value of equipment in setting the value of the business as of the date of the conclusion of the evidentiary part of trial (DOCOEPOT), see Property Division Chart, and thus Husband argues that a similar valuation method should be used to value the business at DOM.

We conclude that the family court clearly erred in finding that there was no DOM value for Husband's business. We remand to the family court to determine the appropriate amount of Category 1 credit that should be awarded to Husband.

Second, Husband argues that the family court abused its discretion in granting Wife $14,022 in Category 1 credit based on the post-DOM sale of her condo and post-DOM mortgage balance. It is clear from the record that the family court used the August 2002 sales price of $112,000, a mortgage payoff of $82,978, and Wife's personal debt of $15,000 at DOM to calculate Wife's Category 1 credit. The family court apparently ignored Diogo's DOM $97,000 appraisal of the condo and a mortgage statement showing a balance of $83,552 at DOM.

The family court did not abuse its discretion in using the August 2002 sales price as the DOM value of the condo, rather than Diogo's DOM appraisal. Wife testified that the condo entered into escrow six or seven months after the marriage, and that during that period the market was stable. Wife further asserts that the best comparable was the actual sale of the property in question, her condo, rather than other properties utilized by Diogo. As Wife points out, some of the comparable properties utilized by Diogo had contract or closing dates more than six months before the DOM. Thus, given the evidence, the

7

family court did not abuse its discretion in relying on the later sales price of Wife's condo.

However, the family court did abuse its discretion in using the August 2002 mortgage payoff in its calculations rather than the DOM mortgage balance, which can be deduced from exhibit D-23, the mortgage statement dated January 1, 2002.  There does not appear to be any valid reason for the family court to use a post-marriage mortgage balance in its calculations instead of the DOM mortgage balance.  Thus, the proper mortgage amount at DOM was $83,552 and Wife's Category 1 credit should be adjusted to $13,448.[2]

Third, Husband argues that the family court abused its discretion in denying Husband Category 3 credit for a gift from his mother.  Wife contends in response that the money from Husband's mother was a gift to the entire family.  In its Amended Divorce Decree, the family court found "that the $10,605.00 from [Husband's] mother to be a gift to the parties and therefore excluded from the division of property."  In its 5/20/10 Findings and Conclusions, the family court stated that "[t]he payment of $10,605.00 from Husband's mother is found to be a gift to the parties."

Husband is correct that the family court failed to make findings as to the elements of a gift.  We must therefore remand this case to the family court to make specific findings as to the elements of whether a gift was made.  Gussin v. Gussin, 73 Haw. 470, 489, 836 P.2d 484, 494 (1992) (holding that it was error not to remand the issue of a gift where the family court failed to make findings as to donative intent or any other element whether gift was made).  "To constitute a gift the essential elements are (1) donative intent, (2) delivery, and (3) acceptance[.]"  Id.

---

[2]   As the parties agree, Wife acknowledged a $15,000 personal debt at DOM.  Therefore, her Category 1 credit is calculated as follows: $112,000 - $83,552 - $15,000 = $13,448.

(citation omitted). Therefore, pursuant to Gussin, we remand the issue of the gift to the family court to make specific findings as to the elements of whether the $10,605 was a gift from Husband's mother to the parties jointly.

### III. Dissipation of Marital Estate

Husband argues that the family court abused its discretion by reducing Husband's share of the marital estate by $20,438.50 for $40,877 in "unnecessary" and "unaccounted for" spending, and that the family court made insufficient findings. In its Amended Divorce Decree, the family court ordered as follows:

> Excessive Spending:
> The costs of Jose Diogo's appraisals and Wendell Ishida's appraisals were unnecessary and shall be assessed to Defendant as reflected on the Property Division Chart. As to the Lae Road improvements, one-half of the $20,991.00 shall be assessed to Defendant as reflected on the Property Division Chart. As to the unaccounted for withdrawals, one-half of the $16,765.00 in unaccounted for withdrawals shall be assessed to Defendant as reflected on the Property Division Chart.

In its 5/20/10 Findings and Conclusions, the family court's FOF 30 found that "the costs of Jose Diogo's appraisals and Wendel[] Ishida's appraisals were unnecessary. As to the Lae Road improvements, one-half shall be assessed to Husband." In FOF 31, the family court found that "there were unaccounted for withdrawals by Husband, and one-half of the $16,765.00 in unaccounted for withdrawals shall be assessed to Husband."

"A reduction of the dollar value of the marital estate chargeable to a divorcing party occurs when, during the time of the divorce, a party's action or inaction caused a reduction of the dollar value of the marital estate under such circumstances that he or she equitably should be charged with having received the dollar value of the reduction." Higashi v. Higashi, 106 Hawai'i 228, 241, 103 P.3d 388, 401 (App. 2004) (emphasis added). "When the court decides that a divorcing party chargeably reduced the dollar value of the marital estate, the court must add the

dollar amount of that chargeable reduction to the dollar value of the marital estate and treat that dollar amount as having been awarded to the divorcing party who caused that chargeable reduction." Id. at 241-42, 103 P.3d at 401-02.

Based on our review of the record and the family court's findings, we conclude that except for the expense related to Wendel Ishida's (Ishida) appraisal, the family court abused its discretion and/or failed to make appropriate findings related to the charges assessed against Husband.

Ishida's appraisal was related to the Puhi industrial lot, which the parties stipulated on December 8, 2008 would be valued at its 2006 purchase price. Ishida's appraisal was completed on April 13, 2009, after the stipulation, and was thus clearly an unnecessary and inappropriate expense. We affirm the family court's charge of Ishida's appraisal costs to Husband.

Diogo's appraisals, on the other hand, were related to the other properties and, moreover, the family court denied Wife's motion to strike Diogo's appraisals, which were ultimately admitted into evidence at trial. Hence, the family court abused its discretion in determining that the expense for Diogo's appraisals was an inappropriate reduction in the marital estate chargeable to Husband. We reverse the family court's charge of Diogo's appraisal costs to Husband.

With respect to the $20,991 in improvements to the Lae Road property and the $16,765 in "unaccounted for" withdrawals, the family court's findings are not "sufficiently comprehensive and pertinent to the issues to disclose to this court the steps by which [the family court] reached its ultimate conclusion" on these factual issues. Doe v. Roe, 5 Haw. App. 558, 566, 705 P.2d 535, 543 (1985). Although a family court is only obligated to make "brief, definite, pertinent findings and conclusions upon the contested matters" and "there is no necessity for over-elaboration of detail or particularization of facts[,]" Id. at

565, 705 P.2d at 542 (internal quotation mark and citation omitted), the family court's findings provide no indication why husband "equitably should be charged with having received the dollar value of the reduction." Higashi, 106 Hawai'i at 241, 103 P.3d at 401. Husband contends that improvements to the Lae Road property were considered in Nakahara's appraisal as of March 26, 2009 and thus were included in the valuation of the marital property. We make no determination on this contention, but we note that it certainly could bear on whether it would be equitable to charge Husband for the Lae Road property improvements. As to the withdrawals, the family court's finding that they are unaccounted for does not necessarily mean that it is equitable to charge them against Husband. We thus vacate the charges against Husband related to the Lae Road property improvements and the withdrawals, and we remand these issues to the family court.

## IV. Child Support and Alimony Under Amended Divorce Decree

Husband argues that the family court abused its discretion by awarding excessive child support and alimony to Wife. Husband claimed at trial that he was earning $2,266 a month at DOCOEPOT. The family court's Amended Decree ordered in relevant part that "Defendant's gross monthly income [is] imputed at $21,315.00 per month based upon averaging his annual salary from the date of marriage through 2008" and FOF 16 in the 5/20/10 Findings and Conclusions likewise stated that Husband's average gross income per month from DOM to the time of trial was $21,315 per month. The family court ordered that, based on the child support guidelines, Husband pay Wife $2,200 per month in child support for the parties' son. The family court also ordered that Husband pay Wife alimony of $2,000 per month from September 1, 2009 to June 1, 2011.

As authorized under Hawaii Revised Statutes (HRS) § 576D-7 (2006 Repl.), the Hawai'i Child Support Guidelines

11

(Guidelines) set forth criteria for establishing the proper amount of child support. See also HRS § 580-47 (2006 Repl. and Supp. 2012) ("In establishing the amounts of child support, the court shall use the guidelines established under section 576D-7.").

> In order to determine the amount of a child support obligation, it is necessary to determine each parent's gross monthly income. For a parent employed by a business or other entity, this determination is usually accomplished by a review of the pay stub or some other verification by his or her employer as to how much his or her income is each month. For the self-employed parent, however, the amount of his or her gross monthly income is usually more difficult to determine.

Doe v. Child Support Enforcement Agency of Hawaii, 87 Hawai'i 178, 182, 953 P.2d 209, 213 (App. 1998). Under the 2004 Guidelines, which were applicable when the Amended Divorce Decree was issued on November 9, 2009, we conclude that the family court abused its discretion in its award of child support.

According to the 2004 Guidelines, gross income "includes income from all sources that are regular and consistent[.]" The 2004 Guidelines further provides: "Imputed income may be used when a parent is not employed full-time or is employed below full earning capacity. The reasons for this limitation must be considered." 2004 Guidelines at 1, 3.

The family court made no findings as to why it imputed income to Husband of $21,315 per month, or to indicate it had considered the reasons for Husband's limitation to full-time employment or full earning capacity. The family court did not suggest or find that Husband was purposely not seeking work, or that Husband had the ability at that time to secure a monthly income of $21,315. We must therefore vacate the family court's Amended Divorce Decree to the extent that it ordered child support of $2,200 per month based on imputed income of $21,315 per month for Husband. This issue is remanded to the family court for further proceedings.

The family court also abused its discretion in awarding alimony to Wife without considering the factors required under HRS § 580-47.  With respect to a family court's alimony award, HRS § 580-47(a) states that

> the court shall take into consideration: the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, the concealment of or failure to disclose income or an asset, or violation of a restraining order issued under section 580-10(a) or (b), if any, by either party, and all other circumstances of the case.

HRS § 580-47(a) further requires a court to consider a list of thirteen factors.  See HRS § 580-47(a).

In _Cassiday v. Cassiday_, 6 Haw. App. 207, 716 P.2d 1145 (1985), _rev'd on other ground_, 68 Haw. 383, 716 P.2d 1133 (1986), this court articulated some of the relevant factual questions under HRS § 580-47(a) as being:

> 1. Taking into account the property awarded in the divorce case to the party seeking spousal support, what amount, if any, does he or she need to maintain the standard of living established during the marriage? . . .

> 2. Taking into account the income of the party seeking spousal support, or what it should be, and the income producing capability of the property awarded to him or her in the divorce action, what is his or her ability to meet his or her need independently? . . .

> 3. Taking into account the income of the party from whom spousal support is sought, or what it should be, and the income producing capability of the property awarded to him or her in the divorce action, what is his or her ability to meet his or her own need while meeting the need for spousal support of the party seeking spousal support?

_Id._ at 215-16, 716 P.2d at 1151; See also _Vorfeld v. Vorfeld_, 8 Haw. App. 391, 402, 804 P.2d 891, 897-98 (1991).  Because no determination was made by the family court in _Cassiday_ as to several of the factual questions, this court reversed the award of spousal support and remanded for further proceedings.  _Id._ at 216, 716 P.2d at 1151.

Here, the family court's sole finding of fact with respect to alimony was FOF 28, stating that "Husband has a significantly greater earning capacity than Wife and that Wife shall be entitled to alimony in the sum of $2,000.00 per month commencing on September 1, 2009, and terminating on June 1, 2011." The family court abused its discretion in awarding Wife $2,000 a month in alimony without some indication that it had considered the factors pursuant to HRS § 580-47(a) or made the relevant factual determinations. Accordingly, we vacate the family court's award of spousal support and remand for further proceedings.

## V. Recalculation of Child Support

The Amended Divorce Decree provided that child support would be recalculated annually, with the parties to provide each other "all financial documents for the previous calendar year from which that party's gross monthly income can be calculated." Husband argues that the family court erred in its recalculation of child support,[3] and additionally argues that the family court made insufficient findings of fact pursuant to HFCR Rule 52.

In its September 8, 2010 Order Recalculating Child Support, the family court found Husband's monthly income for the purpose of recalculating child support to be $4,312.95 per month. The court ordered Husband to pay Wife $320.00 per month in child support.

In its subsequent December 23, 2010 Findings of Fact, Conclusions of Law and Order (12/23/10 Findings and Conclusions), the family court made the following findings in support of its recalculated child support order:

  4.    In 2009, Defendant received $16,580 in unemployment
        benefits;

  5.    In 2009, Defendant received $16,000 as wages
        from [Husband's business];

---

[3] The recalculated child support took effect on March 1, 2010.

14

6.  In 2009, [Husband's business] paid Defendant's attorney $15,487.50 for legal representation in Defendant's divorce case;

7.  In 2009, [Husband's business] paid for Defendant's out of state travel in the amount of $3,155.04;

8.  In 2009, [Husband's business] credit card was used to cover Defendant's personal expenditures in the amount of $3,140.81;

[9.]  In 2009, [Husband's business] also paid and/or reimbursed Defendant for other expenses of Defendant which amount to approximately $1,853.96 per month.

Based on these findings, the family court concluded that child support calculations for 2010 would be based, *inter alia*, upon Husband's "calculated gross monthly income of $6,384.24," and that Husband was entitled to a monthly credit of $2,000 for spousal support payments made to Wife.  Thus, under the 12/23/10 Findings and Conclusions, child support is to be calculated based on $4,384.24 gross monthly income attributed to Husband.

We first note, as Husband points out, that there is no explanation in the 12/23/10 Findings and Conclusions for the discrepancy between the $4,384.24 figure therein and the $4,312.95 figure in the September 8, 2010 Order Recalculating Child Support.  Because we will remand as to the recalculated child support, the family court will be able to readdress this issue.

Husband first argues that the family court failed to reduce his 2009 income by $13,102 in business losses that were claimed on his tax returns.  Under the 2010 Guidelines, which were in effect when the family court recalculated child support, "gross income" includes "income from self-employment[,]" and in turn, "[s]elf-employed individuals must report gross income minus ordinary, necessary and reasonable business/operating expenses[.]"  2010 Guidelines at 17-18, 23.  Husband sought to deduct overall business *losses* for 2009, not "ordinary, necessary and reasonable business/operating expenses."  Thus, it is

15

questionable whether such alleged losses are allowed to be deducted under the Guidelines. Moreover, assuming *arguendo* deduction of such losses are allowed under the Guidelines, this court has noted favorably that

> [o]ther jurisdictions have concluded that a self-employed parent's business deductions should be carefully scrutinized to avoid the sheltering of income at the expense of lessening income available for child support. They have also recognized that tax returns alone do not always provide an accurate determination of a self-employed parent's income. It is the disposable income of the parent and not their income tax returns alone, which must be considered by the Court.

Doe, 87 Hawai'i at 182, 953 P.2d at 213 (internal quotation marks and citation omitted). Based on the record, the family court did not abuse its broad discretion in not reducing Husband's 2009 gross income based on the business losses allegedly incurred by his construction company.

We next address Husband's challenge to the expenses paid by his business that were added to his gross income. First, we reject Husband's challenge to the family court's finding that added $15,487.50 to Husband's income for legal representation in the parties' divorce. The finding is not clearly erroneous and the expense is clearly related to Husband's personal expenses. Second, we also reject Husband's challenge to the $3,140.81 added to his gross income. The family court specifically found that this amount was for Husband's personal expenditures and Husband fails to demonstrate this finding is clearly erroneous.

However, as to the family court's findings that added $3,155.04 for "out of state travel" and $1,853.96 per month for other expenses[4] to Husband's income, we conclude these findings are insufficient because they fail to indicate they were for Husband's personal expenses. See 2010 Guidelines at 23. We thus vacate the Order Recalculating Child Support to the extent it is

---

[4] The $1,853.96 per month amounted to a total of $22,247.52 being added to Husband's income for 2009.

based on Husband's income including these amounts, and we remand these issues for further consideration by the family court.

## VI. Conclusion

Based on the foregoing, the November 9, 2009 Amended Decree Granting Divorce and Awarding Child Custody and the related 5/20/10 Findings and Conclusions are affirmed in part, reversed in part, and vacated in part. The September 8, 2010 Order Recalculating Child Support and the related 12/23/10 Findings and Conclusions are affirmed in part and vacated in part. We remand this case to the family court for further proceedings consistent with this opinion.

DATED: Honolulu, Hawai'i, August 21, 2013.


On the briefs:

Peter Van Name Esser
Lawrence D. McCreery
for Defendant-Appellant
and Defendant-Appellee/
Cross-Appellant

Charles H. Brower
for Plaintiff-Appellee

Presiding Judge

Associate Judge

Associate Judge

17